1020

William A. NASH, Appellant v. AT & T NASSAU METALS, a Corporation, Respondent.

(363 S. E. (2d) 695)

Court of Appeals

*Hugo M. Spitz, J. Kevin Holmes,* both of *Steinberg, Levkoff, Spitz, Goldberg, Pearlman, Holmes & White,* Charleston; and *Daniel A. Beck* of *McWhirter & Beck,* Lexington, *for appellant.*

*Stephen T. Savitz* and *Linda Pearce Edwards,* both of *Gignilliat, Savitz & Bettis,* Columbia; and *John S. Williams,* of *AT & T Nassau Metals,* Gaston, *for respondent.*

Heard June 17, 1987.

Decided Sept. 8, 1987.

On Rehearing Dec. 2, 1987.

*Per Curiam:*

This appeal involves a lengthy dispute between the plaintiff, William A. Nash and his employer, the defendant AT & T Nassau Metals Corporation (Nassau) arising initially from two on-the-job injuries Nash sustained in 1980. Nash commenced this action in the Court of Common Pleas alleging four claims against Nassau, i.e., tortious interference with contractual relations existing between Nash and a third party insurance company, breach of an employment contract with fraudulent intent, outrageous conduct and wrongful termination.

Pursuant to Nassau's motion for summary judgment, the trial court dismissed, discontinued, and forever ended with prejudice Nash's complaint. For purposes of this appeal, Nash challenges only the trial court's dismissal of the causes of action for tortious interference with contractual relations and outrageous conduct. We affirm the trial court's decision on the issue of tortious interference with contractual relations, but modify the decision that the action be dismissed with prejudice and reverse and remand on the issue of outrageous conduct.

## BACKGROUND

Nash was employed by Nassau in 1979. He was a member of the Communications Workers of America, Local 3762, (CWA, also referred to as the union), which represented his bargaining unit at Nassau.

At all times relevant to this action, there was a collective bargaining agreement (the agreement) in effect between Nassau and CWA Local 3762. The agreement incorporated a sickness and accident disability benefit plan covering Nassau employees and their families. Other benefit plans are also included in the agreement. The gravamen of both causes of action on appeal is the termination by Nassau of Nash's benefits under these plans.

Nash's deposition, which is included in the record, recounts the events giving rise to this litigation. In 1980, Nash sustained two on-the-job injuries. Eventually, an orthopedic surgeon referred to Nash by Nassau diagnosed the problem as a herniated disc. Surgery was performed; however, Nash's pain continued. The orthopedic surgeon suggested another operation. After obtaining a second opinion, however, Nash decided against additional surgery.

A company physician determined Nash had become depressed and referred him to a psychiatrist. Probably sometime in 1982, Nash was treated twice by the psychiatrist on an inpatient basis for severe depression. According to Nash, the treatment gave him hope of being able to work again. The psychiatrist also offered to go with Nash to Nassau and explain what work Nash could perform given his disability.

In 1980, just after Nash sustained the two injuries, he received his full salary for thirteen weeks in accordance with the sickness and accident disability benefit plan. He neither requested nor received further benefits under the plan. Nash also received workers' compensation payments following his hospitalization for depression. At the time of his deposition, he was still receiving workers' compensation.

On December 1, 1982, Nassau offered Nash $30,000 and payment of all necessary medical expenses from his surgery for one year in settlement of his claim. The settlement offer, however, was "in exchange for a complete release of all other liability and resignation from employment." Nash rejected the offer because of concern for his and his family's financial and medical security.

On March 8, 1985, Nash received a favorable ruling in the Court of Common Pleas affirming an order by the Industrial Commission awarding him continued disability payments and medical treatment. Nassau did not appeal this ruling.

On March 19, 1985, Nassau scheduled an appointment for Nash with a different psychiatrist of its choosing. On May 9, 1985, Nassau rescheduled the appointment for Nash with the psychiatrist. Nash failed to keep either appointment upon advice of counsel. From letters included in the record, the position of Nash's attorney was that Nassau's procedures were inappropriate under the terms of the Industrial Commission's order.

On July 18, 1985, Nassau informed Nash his employment was terminated and accident benefits withheld effective June 1, 1985 because of his failure to keep the two scheduled appointments. Nassau further asserted its decision was based on a provision in its benefit plan requiring an employee to report for a medical examination by a physician designated by the company at the company's request. On July 19, 1985, Nassau advised Nash of his right to convert to a non-group policy within thirty-one days after termination of his group coverage. Nash alleges Nassau's actions regarding the mailing of these notices more than thirty days after the effective date were intended to and did in fact cause him to lose his contractual rights with third party insurance companies to convert from group to individual coverage.[1]

By letter dated July 25, 1985, Nash's attorney informed Nassau's benefit delegate of his objection to Nassau's handling of Nash's accident benefits. In the letter, copies of which were sent to officials at Nassau, Nash's attorney also stated his intention to seek appropriate action from CWA. The record does not establish that either Nassau or the union responded to this letter; however, apparently, on December 13, 1985, the union did request arbitration of the matter. Nash maintains he was unaware of this request until the hearing on Nassau's motion for summary judgment, on May 12, 1986.

Summary judgment was granted in favor of Nassau by order dated June 27, 1986. By letter dated September 29, 1986, before the matter reached arbitration, Nassau consummated a settlement with CWA, on Nash's behalf, under

---

[1] In his deposition, Nash stated the insurance carrier did not allow him to keep his insurance because he was terminated in June and did not consult the carrier until July.

which Nash was reinstated from his effective date of employment and reimbursed for medical expenses under various medical plans incorporated in the collective bargaining agreement.

## I. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

The trial court granted summary judgment in favor of Nassau on the action for tortious interference with contractual relations on two grounds. First, the court determined Nash failed to exhaust the grievance procedure in the collective bargaining agreement; therefore, his action was precluded under *Republic Steel Corp. v. Maddox*, 379 U. S. 650, 85 S. Ct. 614, 13 L. Ed. (2d) 580 (1965). Second, the court held such an action to be pre-empted by federal labor law under *Allis-Chalmers Corp. v. Lueck*, 471 U. S. 202, 105 S. Ct. 1904, 85 L. Ed. (2d) 206 (1985). We affirm the trial court's dismissal on the basis of pre-emption and in so doing, decline to reach the merits of issue of exhaustion of remedies. We modify the trial court's decision, however, to hold that the dismissal be without prejudice.

The trial court held the action for tortious interference with contractual relations to be pre-empted by federal law under Section 301 of the Labor-Management Relations Act, 29 U.S.C. Section 185(a). That section provides in pertinent part as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court ... having jurisdiction of the parties.

The United States Supreme Court has held the pre-emptive effect of 29 U.S.C. Section 185(a) to extend beyond actions alleging contract violations. *Allis-Chalmers Corp. v. Lueck*, 471 U. S. 202, 105 S. Ct. 1904, 85 L. Ed. (2d) 205 (1985), [cited in *Butts v. AVX Corp.*, 292 S. C. 256, 355 S. E. (2d) 876 (Ct. App. 1987)].

In *Allis-Chalmers*, the plaintiff brought a tort action in state court seeking damages against his employer and its insurer alleging bad faith in the handling of his claim under

a disability plan included in a collective bargaining agreement. In describing the preemptive effect of Section 301, the Supreme Court in *Allis-Chalmers* stated:

> If the policies that animate Section 301 are to be given their proper range, however, the pre-emptive effect of Section 301 must extend beyond suits alleging contract violations. These policies ... require that "the relationships created by [a collective-bargaining] agreement" be defined by application of "an evolving federal common law grounded in national labor policy." *Bowen v. United States Postal Service*, 459 U. S. 212, 224-225, 74 L. Ed. (2d) 402, 103 S. Ct. 588 (1983). The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of Section 301 by relabeling their contract claims as claims for tortious breach of contract.

471 U. S. 210-211 105 S. Ct. 1911, 85 L. Ed. (2d) 215. The court went on to conclude that Lueck's complaint, even though sounding in tort, required a determination of the obligations arising from the labor contract, which could ultimately involve questions of federal labor law.

In South Carolina, to prevail on an action for intentional interference with contractual relations, the plaintiff must prove (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification and (5) resulting damages. *Todd v. South Carolina Farm Bureau Mutual Ins. Co.*, 288 S. C. 155, 321 S. E. (2d) 602 (Ct. App. 1984), *quashed in part on other grounds*, 287 S. C. 190, 336 S. E. (2d) 472 (1985). Of particular

interest here is the fourth element, the absence of justification, which in the present case would require an inquiry into Nassau's rights and obligations under the collective bargaining agreement, especially since Nassau's position is based on its interpretation of the benefit plan. Therefore, Nash's action for tortious interference with contractual relations, though brought under state law, must be treated as one arising under Section 301 or dismissed as pre-empted by federal labor-contract law since resolution of the claim is substantially dependent upon analysis of the labor agreement. *Butts v. AVX, supra,* (citing *Allis-Chalmers, supra*).

The language of *Allis-Chalmers* appears to give the trial court the option to treat such a claim as one arising under Section 301. The rule, however, appears to be one conferring the discretionary authority to do this. *See Allis-Chalmers,* 471 U. S. at 220, 105 S. Ct. 1916, 85 L. Ed. (2d) 221. ("We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Section 301 claim, *see Avco Corp. v. Aero Lodge 735,* 390 U. S. 557, 88 S. Ct. 1235, 20 L. Ed. (2d) 126 (1965) or dismissed as pre-empted by federal labor-contract law."). *Contra Olguin v. Inspiration Consol. Copper Co.,* 740 F. (2d) 1468 (9th Cir. 1984) (case pre-dating *Allis-Chalmers* stating such state law complaints are required to be recharacterized as arising under the collective bargaining agreement).

Having determined that the action for tortious interference with contractual relations is pre-empted by federal labor-contract law, we also uphold the trial court's dismissal of the action on that ground. *See Butts v. AVX, supra* (affirming dismissal of employee's actions for wrongful discharge, breach of contract, fraud and deceit and unjust enrichment on the basis these actions involved a collective bargaining agreement and were therefore pre-empted by federal labor-contract law.).

In affirming the trial court's dismissal of Nash's action for tortious interference with contractual relations on the basis of pre-emption, we emphasize that federal pre-emption does not divest the courts of this state of jurisdiction over such a case. *See Teamsters Union v. Lucas Flour Co.,*

369 U. S. 95, 82 S. Ct. 571, 7 L. Ed. (2d) 593 (1962) (holding state courts may exercise jurisdiction over actions brought under Section 301 but must apply federal law). Because, however, Nash's exceptions did not raise the possibility that the trial court should have considered his case as an action under Section 301, a remand requiring such consideration would exceed our scope of review.

Nevertheless, based on the record before us, we modify the dismissal of Nash's claim for tortious interference with contractual relations to hold that it should have been without prejudice. The trial court's disposition of the case was in response to Nassau's motion under Rules 12(b)(6) and 56, S.C.R.C.P. for dismissal or summary judgment. In its motion, Nassau alleged only that the complaint failed to state a claim for which relief may be granted because it was pre-empted by federal law. Logically, however, if the facts alleged in the complaint state a claim pre-empted by federal law, the plaintiff has, in the language of Rule 12(b)(6) stated "facts sufficient to constitute a cause of action." Federal pre-emption alone should not prevent Nash from bringing an action under Section 301 arising from the same facts in either state or federal court in the future.

We therefore affirm the dismissal of Nash's action for tortious interference with contractual relations but with the modification that the dismissal be without prejudice.

## II. OUTRAGEOUS CONDUCT

In addition, the trial court held Nash's action for outrageous conduct to be pre-empted by the National Labor Relations Act. Since the time the trial court issued its order in the present case, however, this court has held the tort of outrageous conduct, when arising in the context of a labor-related contract, to have at most only a tangential connection with the contract. *Butts v. AVX Corp., supra.*

Whether a defendant's conduct may be reasonably regarded as so extreme and outrageous as to allow recovery is a question for the court to determine in the first instance. *Todd v. South Carolina Farm Bureau Mut. Ins. Co., supra.*

The trial court also held the allegations concerning outrageous conduct, even if true, failed to meet the requirement that the conduct explained of so extreme and outrageous as to exceed all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Ford v. Hutson,* 276 S. C. 157, 276 S. E. (2d) 776 (1981). We disagree, however, with the trial court's emphasis on the absence of a hostile or abusive encounter between Nash and anyone representing Nassau as being dispositive of this issue. In determining if conduct is outrageous, the plaintiff's resilience may be a factor. Conduct may be adjudged outrageous because a defendant acts with knowledge that a plaintiff is peculiarly susceptible to emotional distress, if major outrage is shown. Restatement (Second) of Torts, Section 46, Comment f (1965), quoted in part in *Todd, supra.*

In his allegations concerning outrageous conduct, Nash stated that Nassau's conduct "was substantially certain to and did, in fact, cause the Plaintiff to suffer severe emotional distress, aggravating the plaintiff's pre-existing psychiatric condition known to the Defendant." He further alleged that in light of these facts, Nassau's behavior amounted to outrageous conduct. In essence, Nash alleged Nassau, by its actions, intended to cause him emotional distress and took advantage of his heightened susceptibility to stress. This allegation extends beyond extreme insensitivity, which alone would not make conduct outrageous. *Roberts v. Dunbar Funeral Home,* 288 S. C. 48, 339 S. E. (2d) 517 (Ct. App. 1986).

No part of the record shows that Nassau pierced these allegations concerning its awareness of Nash's emotional state or of the effect of its actions on him. Thus, a genuine issue of material fact is still involved. Accordingly, we reverse and remand the trial court's order of summary judgment on Nash's action for outrageous conduct. As before, in so doing we intimate no opinion as to the viability of Nash's claim. *Gilmore v. Ivey,* 290 S. C. 53, 348 S. E. (2d) 180 (Ct. App. 1986).

Affirmed in part as modified, reversed in part and remanded.

## ORDER ON PETITION FOR REHEARING

The respondent AT&T Nassau Metals Corporation (Nassau) has petitioned this court for a rehearing in the above-captioned matter. This case was heard June 17, 1987 and decided September 8, 1987.

At the request of this court, the appellant William A. Nash filed a supplemental brief on the question of the impact of *Cook v. Mack's Transfer & Storage*, 291 S. C. 84, 352 S. E. (2d) 296 (Ct. App. 1986), *cert. den.*, 292 S. C. 230, 355 S. E. (2d) 861 (1987) on Nash's cause of action for outrageous conduct. In his supplemental brief, Nash conceded, as requested in paragraph 7 of the petition, that this question warranted a remand to the trial court for development of relevant facts. We also granted a petition by Nassau to file a reply brief. In its reply brief, Nassau took the position that the record was sufficient to warrant a dismissal by this court.

In our decision of September 8, 1987, we held that Nash's allegations against Nassau were sufficient to constitute a cause of action for outrageous conduct. Accordingly, we reversed the trial court's order of summary judgment against Nash on his action for outrageous conduct and remanded the matter for further proceedings. In so doing, however, we limited our holding to the sufficiency of Nash's pleadings and expressly stated that we intimated no opinion about the ultimate viability of Nash's claim.

After consideration of the supplemental briefs and other documents filed in this case since our decision as well as a review of the record and briefs prepared for the appeal, we hold that no further purpose would be served by additional argument before this court and that a remand to the trial court is appropriate to develop the facts surrounding Nash's action for outrageous conduct to determine if it should be dismissed under *Cook v. Mack's Transfer & Storage*. We, therefore, adhere to our decision to remand the case, but add several clarifications as to the specific questions to be considered on remand.

In *Cook v. Mack's Transfer & Storage*, this court held that the South Carolina Workers' Compensation Act is the exclusive means of settling all claims against an employer where a personal injury to an employee comes within the

Act. The holding in *Cook* was based in large part on Section 42-1-540, Code of Laws of South Carolina (1976), which provides in part:

> The rights and remedies granted by this Title to an *employee* when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation *on account of personal injury or death by accident,* shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death. [Emphasis added.]

Section 42-1-130, Code of Laws of South Carolina (1976) defines the term "employee" as "every person engaged in an employment under any appointment, contract of hire or apprenticeship, express or implied, oral or written. ..." Section 42-1-160, Code of Laws of South Carolina (1976) limits the term personal injury to mean *only* injury by accident *arising out of and in the course of employment."* [Emphasis added.] Under these statutes, a workers' compensation award is authorized if and only if the employer-employee relationship existed at the time of the alleged injury for which the claim is made. *Alewine v. Tobin Quarries, Inc.,* 206 S. C. 103, 33 S. E. (2d) 81 (1945). *See also Sola v. Sunny Slope Farms,* 244 S. C. 6, 135 S. E. (2d) 321 (1964) (holding that the injury must occur within the period of employment and arise because of the employment as when the employment is a contributing proximate cause).

In his complaint, Nash stated that Nassau informed him July 18, 1985 that his employment and employee benefits had been retroactively terminated as of June 1, 1985. Correspondence included in the record supports this allegation. The sequence of events alone is sufficient to question the applicability of the workers' compensation act since the alleged outrage, namely, the delayed notification by Nassau to Nash that he lost his employee benefits, occurred after the effective date of his discharge. Nassau argues Nash's subsequent reinstatement with his original effective service date means that he never left the employment of Nassau; therefore, his claim of outrageous conduct arose in the course of his employment. We disagree. Whether the terms

of the reinstatement apply to matters other than seniority and benefits is an issue of fact. Moreover, Nassau's position is tantamount to saying that the acts of which Nash complains never happened, an untenable conclusion given the undisputed facts of record.

The exclusivity provision of the South Carolina Workers' Compensation Act is of uncertain application to the present case for yet another reason. Section 42-1-540 is operative only where the injury is "by accident." By contrast, the gravamen of Nash's action for outrageous conduct is the alleged "wilful and malicious wrongful conduct" of Nassau, which, according to Nash, caused him "to suffer shock, emotional distress and other bodily harm." Since the damages Nash sought to prove were not necessarily limited to physical disability, we hold that additional inquiry by the trial court is necessary to determine whether Nash's alleged injury is an "accident" within the South Carolina Workers' Compensation Act. *See Stewart v. McClellan's Stores Co.*, 194 S. C. 50, 9 S. E. (2d) 35 (1940) (holding that an intentional and malicious assault and battery by an employer on an employee, where no physical disability has been suffered, is not an "accident" within the terms of the Workers' Compensation Act so as to preclude recovery at common law).

We dismiss the other issues raised in the petition as without merit.

For the reasons stated, we remand the action for outrageous conduct for proceedings consistent with this order.