## 23030

William A. NASH, Respondent v. AT&T NASSAU METALS,
A Corporation, Petitioner.

(381 S. E. (2d) 206)

Supreme Court

*Stephen T. Savitz, Linda Pearce Edwards,* both of *Gignilliat, Savitz, & Bettis,* Columbia, and *John S. Williams,* of *AT&T Nassau Metals Corp.,* Gaston, *for petitioner.*

*Hugo M. Spitz, J. Kevin Holmes,* both of *Steinberg, Levkoff, Spitz, Goldberg, Pearlman, Holmes & White,* and *Daniel A. Beck,* Charleston, *for respondent.*

Heard Jan. 23, 1989.

Decided June 5, 1989.

HARWELL, Justice:

This case involves preemption of the state law cause of action for the tort of outrageous conduct (intentional infliction of emotional stress) by Section 301 of the Labor Management Relations Act [29 U.S.C. § 185 (1978) ] ("LMRA"). We granted certiorari to review the decision of the Court of Appeals in *Nash v. AT&T Nassau Metals,* 294 S. C. 248, 363 S. E. (2d) 695 (Ct. App. 1987) on the two issues discussed below. We now reverse the Court of Appeals.

## FACTS

Respondent William A. Nash ("Nash") was an employee of AT&T Nassau Metals ("Nassau") and a member of the Communications Workers of America, Local 3762 ("the Union").

In 1980, Nash suffered two on-the-job injuries, for which he underwent surgery and subsequent psychiatric treatment. He received benefits under the South Carolina Workers' Compensation Act; he also received thirteen weeks of full salary under a Nassau sickness and accident disability benefit plan. This benefit plan is part of a collective bargaining agreement between Nassau and the Union. The plan contains a provision which requires employees who receive benefits to consult with a physician designated by Nassau.

After his surgery, Nash was referred to a psychiatrist by his physician. Nassau objected to the psychiatric referral and filed an Application to Stop Payment of Compensation with the South Carolina Industrial Commission. On De-

cember 1, 1982, Nassau offered to settle Nash's workers' compensation claim for $30,000 and payment of all non-psychiatric expenses for one year. This settlement was conditioned upon Nash giving Nassau a complete release and resigning his employment. Nash rejected the settlement. Nash alleges that Nassau thereafter engaged in wilful, deliberate, malicious and outrageous conduct against him for rejecting the settlement offer.

Hearings on the Application to Stop Payment were held on April 20, 1983 and December 23, 1983, resulting in an Order of March 14, 1984 in which the hearing commissioner: 1) found that Nash had not reached maximum medical improvement; 2) further found Nassau did not have the right to stop payment of compensation and; 3) authorized the psychiatric medical treatment. The Full Commission and Circuit Court affirmed this Order.

Nassau did not comply with this Order. Instead, Nassau scheduled an appointment for Nash to consult with a psychiatrist of its designation. Nash refused to agree to the consultation, citing reliance upon the provisions of the March 14 Order of the Commission. Letters in the transcript indicate that Nash's attorney's position was that Nassau's procedures were inappropriate under the terms of the Order. Nassau also set up a second appointment which Nash refused to keep. Nash alleged that Nassau never informed him that the consultation was being scheduled pursuant to the collective bargaining agreement between Nassau and his union. On July 18, 1985 Nassau informed Nash that he had been terminated effective June 1, 1985. The reason given for this termination was Nash's refusal to comply with the term of the collective bargaining agreement which called for Nash to consult with a physician chosen by Nassau. On July 19, 1983, Nassau informed Nash by letter that his group insurance coverage would end on the last day of the month in which he was terminated; the letter further informed him that he could convert to non-group insurance within thirty-one days from termination of his group coverage. Mr. Nash apparently misunderstood this to mean that he had thirty one days from the time of his termination from *employment* to convert; when he received notice of termination on July 19, 1983, Nash thought he had missed the deadline. A call to

the insurance carrier apparently aggravated this misunderstanding.[1]

By letter dated July 25, 1985, Nash's attorney informed Nassau's benefit delegate of his objection to Nassau's handling of Nash's accident benefits and stated his intention to seek appropriate action from the Union. The record does not establish that either Nassau or the Union responded to this letter, however, on December 13, 1985, the Union did request arbitration of the matter (Nash maintains that he did not know of this request until the summary judgment hearing on May 12, 1986).

On February 12, 1986, Nash brought an action alleging tortious interference with contractual relations, breach of the employment contract with fraudulent intent, outrageous conduct, and wrongful termination. The trial court granted Nassau's motion for summary judgment and dismissed the action with prejudice.[2] Nash appealed; the Court of Appeals affirmed in part, and reversed and remanded the order of summary judgment on the claim for outrageous conduct. *Nash v. AT&T Nassau Metals, supra.* Nassau sought a writ of certiorari, which we granted on the following two issues.

The first issue involves whether Nash's claim for outrageous conduct is preempted by § 301 of the LMRA. For reasons discussed below, we hold that it is and reverse the Court of Appeals. The second issue is whether, assuming preemption is not appropriate, Nash's cause of action for outrageous conduct stated a claim for which relief can be granted. Because we hold that this cause of action is preempted, we vacate the portion of the opinion of the Court of Appeals discussing the cause of action for outrage.

---

[1] At deposition, Nash stated that he had called someone at the insurance company who informed him that he had missed the deadline to convert. There is no evidence to indicate that Nassau was responsible for this.

[2] On September 29, 1986, before the matter reached arbitration, Nassau reached a settlement with the Union, on Nash's behalf, under which Nash was reinstated from his effective date of employment and reimbursed for medical expenses under various medical plans incorporated in the collective bargaining agreement.

## DISCUSSION

The United States Supreme Court has provided a test for determining whether a state law claim is preempted by § 301 of the LMRA. The test is one of whether the state claim exists independently of the collective bargaining agreement or whether it is "inextricably intertwined" with a consideration of the terms of the agreement. If the state claim does not exist independently of the agreement, it is preempted by federal law. In determining this issue, we look to whether the tort claim intrinsically relates to the nature and existence of the agreement. Questions that relate to what the parties to a labor agreement intended and what legal consequences were intended to flow from the contract must be resolved by reference to federal law regardless of whether these questions arise in the context of an action alleging breach of contract or liability in tort. *Allis-Chalmers Corp. v. Lueck*, 471 U. S. 202, 105 S. Ct. 1904, 85 L. Ed. (2d) 206 (1985). When assessing whether a state law remedy is "independent" of the collective bargaining agreement, we must examine whether resolution of the state claim requires construction of the collective bargaining agreement. *Lingle v. Norge Division of Magic Chef*, 486 U. S. _____, 108 S. Ct. 1877, 100 L. Ed. (2d) 410 (1988). Whether a cause of action is subject to preemption depends upon the facts of the particular case and the relationship of the alleged tort to the contract must be determined on a case by case basis. *Allis-Chalmers v. Lueck, supra.* Our Court of Appeals has recognized this. *Butts v. AVX*, 292 S. C. 256, 355 S. E. (2d) 876 (Ct. App. 1987). There is no general rule which establishes that the tort of intentional infliction of emotional distress will always be immune from preemption. A review of other decisions on this issue indicates that preemption of this tort is held to be necessary in some cases, while not necessary in others.[3]

---

[3] *See e.g., Newberry v. Pacific Racing Association*, 854 F. (2d) 1142 (9th Cir. 1988) (emotional distress claim requires interpretation of bargaining agreement and is therefore preempted); *Knafel v. Pepsi Cola Bottlers of Akron, Inc.*, 850 F. (2d) 1155 (6th Cir. 1988) (employee's claim for emotional distress based on allegation that by reason of work assigned to her, employer intentionally caused her injury, was preempted); *Hyles v. Mensing*, 849 F. (2d) 1213 (9th Cir. 1988) (employee's claim of emotional distress was

The South Carolina Court of Appeals has held that the tort of intentional infliction of emotional distress, when arising in the context of a labor related contract, has at most only a tangential connection with the contract and is not preempted by § 301. *Butts v. AVX, supra.* In the present case, the Court of Appeals, in a one sentence discussion, held that because Nash's case, like *Butts*, also involved intentional infliction of emotional distress, it too was immune from preemption. This summary disposition was error in that the Court of Appeals failed to follow the directive of *Lueck* (and indeed its own directive in *Butts*) that preemption be decided on a case-by-case basis.

An examination of the facts in *Butts* illustrates how markedly different that situation is from the case at bar. Mr. Butts had undergone surgery on his vocal chords. His physician provided him with an excuse from work which read "no vocalization." When Mr. Butts returned to work and submitted the excuse, a dispute arose as to whether he had any medical excuses remaining.

In the discussions which followed, Mr. Butts attempted to communicate through note-writing, but was unsuccessful in making himself clear. His frustrations, along with alleged pressure by two of his supervisors, forced him to speak, causing strain and irritation of his vocal chords. He informed the supervisors that he could not work for the rest of the day and punched his time card. A dispute later arose as

inextricably intertwined with the collective bargaining agreement, and was therefore preempted); *Scott v. Machinists Automotive Trades D. Lodge 190,* 827 F. (2d) 589 (9th Cir. 1987) (employee's claim for emotional distress involved procedures covered by collective bargaining agreement and was therefore preempted); *Young v. Anthony's Fish Grotto,* 830 F. (2d) 993 (9th Cir. 1987) (emotional distress claim arose from same conduct as breach of contract claim and was therefore preempted); *Truex v. Garrett Freightlines, Inc.,* 784 F. (2d) 1347 (9th Cir. 1985) (intentional infliction of emotional distress claim preempted by § 301); *Tellez v. Pacific Gas & Elec. Co.,* 817 F. (2d) 536 (9th Cir. 1987) (emotional distress claims not preempted because they arose from conduct not covered by collective bargaining agreement); *Garibaldi v. Lucky Food Stores,* 726 F. (2d) 1367 (9th Cir. 1984) (emotional distress claim arising from defendant's retaliation for plaintiff's report of spoiled milk to health authorities not preempted because conduct not covered by collective bargaining agreement); *Blair v. Allied Maintenance Corp.,* 756 S.W. (2d) 267 (Tenn. App. 1988) (tort of outrageous conduct against supervisor for his personal actions not preempted).

to whether Butts quit or was fired. The collective bargaining agreement between Butts' union and AVX prescribed a grievance procedure which Butts did not follow. Butts brought suit against AVX alleging wrongful discharge, breach of contract, intentional infliction of emotional distress, fraud and deceit, and unjust enrichment. The trial court granted AVX summary judgment on all causes on the basis that each was rooted in a collective bargaining agreement which Butts had failed to follow. Butts appealed.

Upon review, the Court of Appeals affirmed the ruling of the trial court with the exception of the dismissal of the cause of action for intentional infliction of emotional distress, holding that this cause of action had only a tangential connection to the labor contract. The court noted that the alleged tort arose out of management's continual denial of Butts' medical excuse, causing him to feel the need to vocalize his position, thus irritating his vocal chords. The Court of Appeals held that evaluation of whether this conduct amounted to intentional infliction of emotional distress did not necessitate an examination of the labor contract. The focus was on the actions of the supervisors; these actions alone constituted the tort and were independent of the collective bargaining agreement.

Given the difference between the facts in *Butts* and those here, it was error for the Court of Appeals not to engage in an ad hoc determination as to whether preemption was appropriate here.

The crux of Nash's claim for outrageous conduct stems from an allegation that Nassau deliberately and willfully set about a course of conduct to deprive him of his benefits and terminate his employment. Nassau contends that its conduct was pursuant to the provision in its collective bargaining agreement allowing it to require Nash to consult with a doctor of Nassau's choosing and to terminate his benefits and employment upon his failure to cooperate. It appears that Nash's claim turns on allegations that Nassau abused its procedures in an effort to deliberately deprive him of his benefits. Whether the actions constituted an abuse necessarily involves a determination as to whether the parties complied with the agreement. Part of Nash's claim stems from an allegation that Nassau refused

to inform him that the company was invoking the agreement when it set up the appointment; Nash asserts Nassau was purposefully vague and intentionally created a situation whereby Nash's failure to comply with the contract was inevitable.

Because Nassau's conduct in carrying out the agreement constitutes the core of this action, we do not believe a court can interpret the possible outrageousness of AT&T's actions without examining the collective bargaining agreement. Therefore, in keeping with *Lueck*'s directive that preemption matters are best determined on a case-by-case basis, we hold, under the facts of this case, that Nash's cause of action is preempted by § 301 of the LMRA. Our holding on the preemption issue obviates any need for a determination as to whether Nash stated a claim for outrage. The holding of the Court of Appeals on the issue of preemption is reversed. The holding of the Court of Appeals as to whether Nash stated a claim for outrage is vacated.

Reversed.

GREGORY, C. J., and CHANDLER, FINNEY and TOAL, JJ., concur.

