2460

MEDICAL PARK OB/GYN, P.A., Appellant v.
Mike RAGIN, Peter Demos, Jr., and J. Munford Scott, Respondents.
(467 S.E. (2d) 261)

Court of Appeals

---

[3] The state does not alternatively argue the error here is harmless.

*Robert E. Stepp* and *Blaney A. Coskrey, III, Glenn, Irvin, Murphy, Gray & Stepp,* Columbia, *for appellant.*

*Jeter E. Rhodes, Jr.* and *John C. Bradley, Jr., McCutchen, Blanton, Rhodes & Johnson; Tracey L. Eggleston* and *Allan Levin,* both of *Cozen & O'Connor; James W. Alford* and *R. Lewis Johnson,* both of *Barnes , Alford, Stork & Johnson,* Columbia, *for respondents.*

Heard Jan. 10, 1996.

Decided Feb. 5, 1996.

HEARN, Judge:

Medical Park OB/GYN, P.A., formerly known as George W.

Watt, M.D., P.A. (Medical Park), instituted this action against Mike Ragin, Peter Demos, Jr., and J. Munford Scott (collectively, respondents) alleging negligent misrepresentation, breach of fiduciary duty and professional negligence in the formation of an IRS Qualified Money Purchase Pension Plan. Medical Park appeals from the trial court's grant of respondents' Rule 12(b)(1), SCRCP, motion to dismiss the action for lack of subject matter jurisdiction. We reverse and remand.

Medical Park alleged that at some time in 1986, Demos and Ragin approached Dr. George Watt concerning the formation of an IRS Qualified Money Purchase Pension Plan.[1] Demos and Ragin held themselves out to be professionals with expertise in the field of employee benefit plans, and extensively advised Medical Park regarding the specifics of forming an employee benefit plan, tax benefits, and obligations which would exist in the administration of such plans. Demos and Ragin also recommended that Medical Park retain Scott as its attorney for purposes of forming an employee benefit plan.

Respondents prepared all documents necessary to create and implement an employee benefit plan (the Plan), and Medical Park relied on their advice, instructions and recommendations during the formation period. In June 1986, acting on respondents' advice, Medical Park executed the documents, thereby formally creating the Plan.

Medical Park alleged that in reliance on respondents' representations and/or omissions, Medical Park believed contribution to the Plan was entirely discretionary. Respondents allegedly failed to inform Medical Park certain contributions were mandatory or that failure to make the requisite contributions would result in grievous financial and legal consequences. According to Medical Park, had it understood the contributions were mandatory, it would not have adopted the Plan.

Unbeknownst to Medical Park, as the number of its employees increased, the amount of mandatory contributions required to fund the Plan also increased. In May 1991, a physician employee terminated his employment with Medical Park and demanded benefits due him under the Plan. Medical Park then learned of the mandatory contribution requirement and

---

[1] *See Russell v. City of Columbia,* 305 S.C. 86, 406 S.E. (2d) 338 (1991) (for purposes of considering a motion for judgment on the pleadings, all properly pleaded factual allegations are deemed admitted).

that the Plan was severely underfunded. As a result of the underfunding, Medical Park was subjected to substantial legal liability.

Medical Park filed this action in December 1993, alleging negligent misrepresentation, breach of fiduciary duty, and professional negligence on the part of respondents and seeking recovery for damages suffered due to underfunding of the Plan and resulting liability. Thereafter, Demos removed this action to the United States District Court for the District of South Carolina, alleging the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., (1985 & Supp. 1995) vested exclusive jurisdiction in the federal court to hear the matters raised in Medical Park's complaint. Medical Park moved to remand the case to state court on the grounds (1) the removal petition was defective because it was not filed on behalf of all defendants, and (2) the federal court lacked jurisdiction because the case did not arise under ERISA. The federal court granted Medical Park's motion to remand based on Demos' failure to obtain the consent of all the defendants, but declined to address the question of exclusive jurisdiction.

Following the remand, respondents moved, pursuant to Rule 12(b)(1) and 12(b)(6), SCRCP, for an order dismissing Medical Park's claims for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted. As to their 12(b)(1) motion, respondents specifically argued Medical Park's complaint was grounded on the administration, interpretation and enforcement of a pension plan governed by ERISA and Congress vested exclusive jurisdiction over claims relating to the enforcement and administration of such plans in the federal judiciary. After a hearing on the matter, the circuit court issued its order granting respondents' motions to dismiss for lack of subject matter jurisdiction. Specifically, the circuit court found Medical Park's common law claims "relate to" an employee benefit plan and are therefore preempted under 29 U.S.C.A. § 1144(a) (1985 & Supp. 1995).[2]

[2] Respondents assert Medical Park failed to preserve any error the circuit court may have committed in determining its actions are preempted under § 1144(a) because it has failed to appeal the court's alternate finding that the federal courts have exclusive jurisdiction pursuant to 29 U.S.C.A. § 1132(e) which provides:

On appeal, Medical Park asserts the circuit court erred ■ in dismissing its complaint because its state law claims of negligent misrepresentation, breach of fiduciary, duty, and professional negligence do not "relate to" an ERISA plan within the meaning of applicable case and statutory law. We agree.

A federal statute preempts state action in fields of ██ traditional state regulation only if the clear and manifest intent of Congress in passing the federal statute was "to occupy the field to the exclusion of the State." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed. (2d) 206 (1985); *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 719, 105 S.Ct. 2371, 2378, 85 L.Ed. (2d) 714 (1985); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309-10, 51 L.Ed. (2d) 604 (1977). Without question, Congress has expressed its intent to occupy the field of employee benefit plans to the exclusion of the states. 29 U.S.C. § 1144(a), often deemed "conspicuous for the its breadth," provides that ERISA preempts "any and all State law insofar as they . . . relate to any employee benefit plan." *See FMC Corp. v. Holliday*, 498 U.S. 52, 57, 111 S.Ct. 403, 407, 112 L.Ed. (2d) 356 (1990). In interpreting the scope of this preemptive language, the United States Supreme Court has held the phrase "relate to" should be given its broad, common-sense meaning such that a state law "relates to" an employee benefit plan within the meaning of § 1144(a) if it has a "connection with or

---

Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary.

(29 U.S.C.A § 1132(a)(1)(b) provides that a participant or beneficiary may bring a civil action to recover benefits due to him under the terms of his plan, to clarify his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.)

This argument is without merit because (1) subject matter jurisdiction may be raised at any time; and (2) § 1132(a)(1)(b) is applicable only if the court was correct in determining Medical Park's claims were preempted. In short, the court's finding under § 1132 was a jurisdictional conclusion based on its finding Medical Park's claims were preempted rather than an alternative sustaining ground.

reference to" such a plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed. (2d) 39 (1987). As such, a state law may be subject to preemption under ERISA "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. Mc-Clendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed. (2d) 474 (1990).

ERISA's preemption clause is not, however, all encompassing. This Court has recently held that an action seeking damages for misrepresentation of coverage under an ERISA plan was not related to the plan in such a manner as to be preempted by ERISA. *Heaitley v. Brittingham, Dial & Jeffcoat*, — S.C. —, 465 S.E. (2d) 763 (App. 1995). In *Heaitley*, this Court quoted with approval the language of the United States Supreme Court in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed. (2d) 490 (1983), that those state actions which affect employee benefit plans in "too tenuous, remote or peripheral a manner" do not relate to the plan. *Id.* A recent decision by the United States Supreme Court affords further support to this interpretation of the phase "related to" in the context of Federal preemption under ERISA:

> If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for "really, universally, relations stop nowhere." But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against preemption out of the law whenever Congress speaks to the matter with generality.

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Inc. Co.*, — U.S. —, —, 115 S.Ct. 1671, 1677, 131 L.Ed. (2d) 695 (1995) (citations omitted). Thus, in determining whether a state law "relates to" an employee benefit plan, "infinite relations cannot be the measure of preemption. . . ." *Id.* It follows that in order to properly ascertain whether a state law triggers preemption under ERISA, it is necessary to "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of

state law that Congress understood would survive." *Id.* at —, 115 S.Ct. at 1677.

■ Congress enacted ERISA for the express purpose of providing certain safeguards for the protection of the interests of participants in employee benefit plans. 29 U.S.C.A. § 1001(b) (1985). Finding that owing to the lack of uniformity in the regulation of such plan, "the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered," Congress endeavored to create a comprehensive set of "standards of conduct, responsibility, and obligation for plan fiduciaries of employee benefit plans" and established "appropriate remedies, sanctions, and ready access to the federal courts." 29 U.S.C.A. § 1001(a) & (b). In *New York State Conference,* the Court explored the specific question of Congressional intent as it relates to the enactment of ERISA's preemption clause. — U.S. —, 115 S.Ct. 1671. The Court determined that "the basic thrust of the preemption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plan." *Id.* at ——, 115 S.Ct. at 1677-78.[3]

Based on these principles and the facts and circumstances of this case, we hold that any relationship between Medical Park's claims and the regulation or administration of an ERISA plan is too tenuous, remote, or peripheral to trigger preemption. Medical Park seeks to recover against parties who allegedly advised it to adopt an ERISA plan and then misrepresented and/or failed to offer competent advice regarding the administration of such a plan. Medical Park does not seek to alter the terms of the plan and does not argue the plan is itself defective. Indeed, the claims relate to advice

---

[3] The Court went on to hold a New York statute imposing surcharges on patients covered by certain insurers was not preempted. *New York State Conference,* — U.S. —, 115 S.Ct. 1671. The Court reached this holding despite recognizing that such tariffs would affect ERISA plans by encouraging insurance buyers, including ERISA plans, to choose certain insurers over others. — U.S. — – —, 115 S.Ct. at 1672-73. The Court reasoned the state statute was not preempted despite its affect on ERISA plans partly because "[a]n indirect economic influence . . . does not bind plan administrators to any particular choice . . . [or] preclude uniform administrative practice or the provision of a uniform interstate benefit package. . . . It simply bears on the costs of benefits and the relative costs of competing insurance to provided them."

given prior to the implementation of the Plan. Further, Medical Park does not seek to modify or avoid its administrative responsibilities under the plan, and nothing in Medical Park's state law claims calls into question the right of a plan beneficiary or participant to collect under the terms of the plan. *See Perkins v. Time Ins. Co.*, 898 F. (2d) 470, 473 (5th Cir. 1990) ["A state law claim . . . which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA."].

As noted above, Congress' intent in enacting ERISA was to protect the rights of beneficiaries and participants in employment plans, and ERISA's preemptive clause was enacted to ensure national uniformity in the regulation and administration of employee benefit plans. Because adjudication of Medical Park's claims in state court will not in any way affect Medical Park's obligations under the plan, will not affect the rights of any plan participants or beneficiaries and will not threaten the uniform regulation or administration of employee benefit plans, Medical Park's claims simply do not fall within the preemptive scope of § 1144(a).

For the foregoing reasons, the decision of the trial court is reversed and the case remanded for further proceedings.

Reversed and remanded.

SHAW and GOOLSBY, JJ., concur.